UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
04-CV-3220(JMR/FLN)

```
Tom Lundeen et al.                )
                                  )
          v.                      )          ORDER
                                  )
Canadian Pacific Railway Company  )
et al.                            )
```

This case, and thirty other related cases,[1] arises out of a train derailment which occurred on January 18, 2002, near Minot, North Dakota. Defendants ask the Court to dismiss these cases pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") claiming federal preemption bars plaintiffs' state law negligence claims. Plaintiffs ask the Court to stay its hand until the Eighth Circuit Court of Appeals has issued a ruling on a similar motion in another case arising from this incident. Plaintiffs' motion is denied; defendants' motion is granted.

I. <u>Factual and Procedural Background</u>[2]

In the early morning hours of January 18, 2002, a freight train owned and operated by defendants (collectively referred to as "CP Rail") derailed near a residential neighborhood just beyond the city limits of Minot, North Dakota. During the derailment, five

---

[1] Consistent with the District Court Order issued August 16, 2004, and the Eighth Circuit's consolidation of this litigation on appeal, this Order applies equally to the thirty related cases identified in the attached Addendum.

[2] For purposes of this Opinion, those facts upon which the parties do not agree have been considered in the light most favorable to plaintiffs.

tank cars released more than 220,000 gallons of anhydrous ammonia. The resulting anhydrous ammonia cloud released toxic gas into the environment.  Many of those exposed to the gas suffered burning of moist tissue such as the eyes, throat, and lungs.  One person died as a result of the vapor plume; 11 people sustained serious injuries; and 322 people sustained major injuries.  Plaintiffs are among those injured by the release of the toxic gas.

At the time of the accident, the train was traveling on continuous welded rail ("CWR") track.  When CWR track is damaged, it is replaced with "plug rail," which is attached to the original rail by joint bars.

The National Transportation Safety Board ("NTSB") investigated the derailment and found fractures in the joint bars at the east end of the plug rail.  The Board further found that these fractures caused the rail itself to break away, leading to the derailment. The NTSB's Railroad Accident Report found the probable cause of the accident to be "an ineffective Canadian Pacific Railway inspection and maintenance program that did not identify and replace cracked joint bars before they completely fractured and led to the breaking of the rail at the joint."  Track Safety Standards; Inspections of Joints in Continuous Welded Rail (CWR), 71 Fed. Reg. 59677, 59678-79 (Oct. 11, 2006) (quoting NTSB Railroad Accident Report: Derailment of Canadian Pacific Railway Freight Train 292-16 and Subsequent Release of Anhydrous Ammonia Near Minot, North Dakota,

2

January 18, 2002 (NTSB/RAR-04-01) (March 9, 2004)).

Exposure to anhydrous ammonia led plaintiffs, along with hundreds of other Minot residents, to file lawsuits against CP Rail in Minnesota state court for personal injuries and property damages. Plaintiffs' original complaint alleged that CP Rail had violated "United States law." Citing this assertion, CP Rail removed the cases to federal court on July 15, 2004, claiming federal question jurisdiction pursuant to 28 U.S.C. § 1441(a) & (b). Soon thereafter, plaintiffs moved for remand to state court. Their motion was denied on October 26, 2004, by the district court, which found it had federal jurisdiction. Plaintiffs, thereafter, attempted to eliminate the federal question by amending their complaint, deleting any claim for violations of "United States law."

After this amendment, the district court remanded the cases to state court by Order dated March 9, 2005. CP Rail appealed the remand to the Eighth Circuit Court of Appeals.[3] The Eighth Circuit reversed, holding that, notwithstanding plaintiffs' amendment, the district court retained jurisdiction because federal law completely preempts state law claims of negligent inspection. Lundeen v. Canadian Pac. Ry. Co., 447 F.3d 606, 613-15 (8th Cir. 2006). The appellate court remanded the cases for further proceedings pursuant

_____

[3]While the appeal was pending, however, these cases proceeded to discovery, and some were scheduled for trial in state court.

3

to its rulings.   Id. at 615.   Plaintiffs sought a Writ of Certiorari to the U.S. Supreme Court, which was denied on January 22, 2007.   Lundeen v. Canadian Pac. Ry. Co., --- U.S. ---, 2007 WL 135710.   Plaintiffs' previous request for a stay pending Supreme Court review is now moot.

As a result, the Court now considers plaintiffs' remanded negligence claims, which fall into four categories:   (1) negligent inspections;   (2)   negligent   construction   and   maintenance;   (3) negligent hiring and training;   and (4) negligent operation.   CP Rail seeks summary judgment, asserting each claim is preempted by the   Federal   Railroad   Safety   Act   ("FRSA")   and   its   attendant regulations.

II.   Analysis

A.   Motion to Stay - Further Procedural Issues

Plaintiffs ask this Court to abstain from deciding CP Rail's motion to dismiss pending the outcome an appeal of an order dismissing a related North Dakota case, Mehl v. Canadian Pac. Ry. Ltd., 417 F. Supp. 2d 1104 (D.N.D. 2006), which is pending in the Eighth Circuit Court of Appeals.   There, the district court found federal preemption, and dismissed numerous claims arising from the same derailment.

The Court declines the invitation to stay its hand.   It is not for this Court to conjecture about the outcome of the Mehl case. Whatever other matters are underway in the empyrean, the Eighth

Circuit has remanded these cases to this Court for further proceedings in accord with its decision. <u>Lundeen</u>, 447 F.3d at 615. Accordingly, this Court will do as directed to comply with the mandate.  Plaintiffs' motion to stay is denied.

    B.  <u>Judgment on the Pleadings</u>

    CP Rail has moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  When considering such a motion, a court applies the same standard as in a 12(b)(6) motion for failure to state a claim.  <u>St. Paul Ramsey County Med. Ctr. v. Pennington County, South Dakota</u>, 857 F.2d 1185, 1187 (8th Cir. 1988).  The court accepts as true all facts pleaded by the non-moving party, granting all reasonable inferences in its favor.  <u>United States v. Any and All Radio Station Transmission Equip.</u>, 207 F.3d 458, 462 (8th Cir. 2000).  A court may only grant a motion for judgment on the pleadings when the moving party clearly establishes that no material issue of fact remains to be resolved, and it is entitled to judgment as a matter of law.  <u>Id.</u>; Fed. R. Civ. P. 12(c).

    C.  <u>Preemption</u>

    Federal preemption derives from the Supremacy Clause of the United States Constitution.  The Constitution establishes the laws of the United States as "the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const. art. VI, cl. 2.  Thus, any state law which conflicts with federal laws or regulations is preempted.  <u>CSX</u>

Transp., Inc. v. Easterwood, 507 U.S. 658, 663 (1993).

When Congress enacted the FRSA, it directed the Secretary of Transportation to "prescribe regulations and issue orders for every area of railroad safety."  49 U.S.C. § 20103.  The Secretary delegated authority to "[c]arry out the functions vested in the Secretary by the [FRSA]" to the Federal Railroad Administration ("FRA").  49 C.F.R. § 1.49(m).  The FRA has done so by establishing a "national railroad safety program . . . to promote safety in all areas of railroad operations in order to reduce deaths, injuries and damage to property resulting from railroad accidents."  Id. at § 212.101(a).  To assure that railway safety is "nationally uniform to the extent practicable," Congress wrote into the FRSA an explicit preemption clause whereby states retain authority to regulate railroad safety, but only "until the Secretary of Transportation . . . prescribes a regulation or issues an order covering the subject matter of the State requirement."  49 U.S.C. § 20106.  Once the Secretary of Transportation has done so, state law is preempted.

The United States Supreme Court has made this clear.  It held that regulations adopted pursuant to the FRSA preempt state law tort claims if they cover -- or "substantially subsume" -- the subject matter of the relevant state law.  Easterwood, 507 U.S. at 664.  The Eighth Circuit Court of Appeals also deems coverage to be preemption's touchstone.  In re Derailment Cases, 416 F.3d 787, 793

6

(8th Cir. 2005) (hereinafter Scottsbluff).   State tort laws are preempted whenever federal regulations, adopted pursuant to the FRSA, address the same subject matter.   Id.

In the face of this established law, plaintiffs advance three arguments against FRSA preemption in this case.   First, they assert their claims arise from subject matters which are not covered by FRA regulations.   They deny that inspection and maintenance of CWR track is covered by the FRSA and its attendant Federal Regulations. Next, they claim that only state tort claims imposing additional or more stringent duties are federally preempted.   Finally, they seek shelter in the FRSA's Safe Harbor provision, which provides an exception to preemption for state laws addressing a local safety hazard.   Each argument fails.

1.   "Covered" Claims

Plaintiffs allege the Minot derailment was chiefly caused by CP Rail's ineffective and inadequate inspection and maintenance program.   They claim CP Rail "failed to identify or replace cracked joint bars [in CWR] before those joint bars completely fractured." (Am. Compl. ¶ XVII.)   According to plaintiffs, because their claims relate to inspection and maintenance of a specific type of track – CWR, as opposed to bolted track – they are not covered by any FRA regulations.   Beyond this, they argue that regulations which do cover CWR are too general for preemption purposes.

The principal regulatory provision addressing CWR is 49 C.F.R.

§ 213.119.  Under that section, railways using CWR are to adopt internal procedures regarding safety concerns specific to CWR.  The regulations in effect when the accident occurred required each owner of CWR track to "have in effect and comply with written procedures which address the installation, adjustment, maintenance and inspection of CWR, and a training program for the application of those procedures."  49 C.F.R. § 213.119 (1998).  The FRA, in turn, is to review each railroad's plan to ensure it addresses certain safety issues and monitors compliance with the procedures. Id.

In determining the most effective way to regulate CWR, the FRA concluded that:

> consistent methodology is not as important as effective methodology in installing and maintaining CWR.  Therefore . . . § 231.119 [is] premised on the concept that the regulations should provide railroads with as much flexibility as safely feasible.

Track Safety Standards, 63 Fed. Reg. 33992, 33994 (Jun. 22, 1998). According to the FRA, amendments to its Track Safety Standards, including § 231.119, "present additional regulatory requirements . . . to improve track safety and provide the railroad industry with the flexibility needed to effect a safer and more efficient use of resources."  Id. at 33992.

Plaintiffs claim these regulatory requirements are not specific enough to give them preemptive effect, because the FRA delegated to the railroads the task of developing internal

procedures for inspection and maintenance of CWR.  Plaintiffs claim FRSA preemption does not apply when the FRA has directed railroads to implement internal plans covering defined safety issues, even where the FRA has identified the specific safety issues to be addressed.  In other words, plaintiffs would require the FRA itself to specify the exact procedures a railroad must impose before federal preemption attaches.  The Court disagrees.

The FRSA preempts all claims arising from "covered" subject matters.  49 U.S.C. § 20106.  The "subject matter" of a claim is "the safety concern[ ] that the state law addresses."  Burlington N. R.R. & Santa Fe Ry. Co. v. Doyle, 186 F.3d 790, 796 (7th Cir. 1999).  Easterwood makes clear that, to "cover the subject matter," the regulation must "substantially subsume" the subject matter of the state law, not merely "touch upon" or "relate to" it.  507 U.S. at 664.  But a federal regulation may substantially subsume a particular subject matter when the FRA examines a safety concern and affirmatively determines its goals will best be achieved by issuing a regulation directing railroads to develop a plan to address the concern, thus granting them the flexibility to adjust specific requirements to their individual circumstances.  CSX Transp., Inc. v. Williams, 406 F.3d 667, 671-72 (D.C. Cir. 2005).  This principle applies here.

The FRA considered the best way to address CWR safety issues.  See 63 Fed. Reg. at 33993-94.  In doing so, it established a

research program to develop criteria and guidelines for regulating CWR, and concluded the best approach was to identify the basic safety issues and "allow railroads to develop and implement their individual CWR programs based on procedures which have proven effective for them over the years."   Id. at 33994.   The FRA's reliance on railroad expertise does not negate the fact that the resulting regulations cover the subject matter of the inspections and maintenance of CWR.   Plaintiffs do not, primarily, deny that the 1998's version of § 213.119 failed to cover CWR inspections and maintenance; instead, they assert that in deferring to the railroads, the FRA's regulatory efforts were inadequate.

This argument fails because "[t]he FRSA provision, however, authorizes the court *only* to determine whether the regulation covers the subject matter. . . .   Neither the court nor the [litigant] is authorized or equipped to measure off the adequacy of [the] agency's strategic determinations."   Williams, 406 F.3d at 672 (emphasis in original).   Thus, plaintiffs' argument that § 213.119 was inadequate to prevent the Minot derailment is irrelevant; the regulation undoubtedly covers CWR.

Plaintiffs' second effort to avoid § 213.119 preemption also fails.   They argue the regulation does not apply in this case, because its precondition – the railroad's development of procedures to maintain and repair CWR – had not been completed.   This argument derives from the fact that, at the time of the accident, CP Rail

had not submitted its internal procedures concerning CWR track inspection to the FRA pursuant to § 213.119.  This argument is simply a non-compliance claim disguised as one for failure to satisfy a "precondition."   Even assuming that failing to submit internal railroad procedures on time does not fulfill a "precondition," plaintiffs' argument does not succeed.   The question of whether CP Rail failed to comply with § 213.119 is irrelevant.  Neither the United States Supreme Court nor the Eighth Circuit Court of Appeals requires a railroad to prove FRA compliance before allowing state law preemption.  Both Courts deem coverage, rather than compliance, to be preemption's touchstone. "It is this displacement of state law concerning the [subject matter], and not . . . adherence to the [federal] standard . . . that pre-empts state tort actions."  <u>Norfolk S. Ry. Co. v. Shanklin</u>, 529 U.S. 344, 357-58 (2000); <u>accord</u> <u>Lundeen</u>, 447 F.3d at 611 (finding complete preemption of negligent inspection claims, despite plaintiffs' claim that the railroad failed to comply with FRA regulations).

Plaintiffs offer <u>Easterwood</u>'s analysis of 23 C.F.R. § 646.214(b) to support their argument.  Their reliance on <u>Easterwood</u> is misplaced.  Section 646.214(b), considered in <u>Easterwood</u>, regulates railroad crossing devices paid for with federal funds. <u>Easterwood</u> holds that, because § 646.214(b) applies only when federal funds "participate in the installation" of railroad

crossing devices, the section does not apply when the federal funding precondition has not been met.   507 U.S. at 671-73. Section 646.214(b)'s federal funding precondition is explicit; its standards apply "where federal funds participate in the installation of the devices."  23 C.F.R. § 646.214(b)(3)(i).  This explicit precondition "covers" – and preempts – state law claims only after the crossing devices have been installed and federal funds expended.

This must be contrasted to Part 213 regulations, including § 213.119, which prescribe "the mere issuance of these regulations preempts any State law, regulation, or order covering the same subject matter."  49 C.F.R. § 213.2.   Thus, there are no preconditions for coverage or preemption in § 213.119.

Ultimately then, preemption turns on whether FRA regulations substantially subsume plaintiffs' negligence claims, regardless of CP Rail's compliance.  See Scottsbluff, 416 F.3d at 793; Mayor & City Council of Baltimore v. CSX Transp., Inc., 404 F. Supp. 2d 869 (D. Md. 2005).  The regulations need not spell out every detail or "impose bureaucratic micromanagement in order to substantially subsume a particular subject matter."  Scottsbluff, 416 F.3d at 794.  Thus, the ultimate question is whether the FRA regulations cover the subject matter of plaintiffs' negligence claims, and they do.

2.  <u>Negligent Inspections</u>

The Eighth Circuit has ruled in this very case that plaintiffs' negligent inspection claims are preempted by numerous FRA regulations.  <u>Lundeen</u>, 447 F.3d at 614.  As stated by the Court, "It is clear the FRA regulations are intended to prevent negligent track inspection and there is no indication the FRA meant to leave open a state law cause of action."  <u>Id.</u>  One might think this would conclude the inquiry.  <u>See</u> <u>Lamb Eng'g & Constr. Co. v. Neb. Pub. Power Dist.</u>, 145 F.3d 996, 998 (8th Cir. 1998) ("Under the law of the case doctrine, the district court was bound on remand to obey the Eighth Circuit's mandate and not to re-examine issues already settled by our prior panel opinion.").

The Eighth Circuit's declaration and its issued mandate have not, however, deterred plaintiffs.  They now assert the <u>Lundeen</u> court's preemption analysis is inapplicable, because that court analyzed plaintiffs' claims using the doctrine of complete – as opposed to defensive – preemption.  Plaintiffs may not, however, cling to this reed:  in reaching its conclusion, the <u>Lundeen</u> court relied on the <u>Scottsbluff</u> decision, and <u>Scottsbluff</u> was a defensive preemption case.  <u>Lundeen</u>, 447 F.3d at 614 (recognizing <u>Scottsbluff</u> as being a conflict rather than complete preemption case).

Plaintiffs continue their attack on the Eighth Circuit's treatment of this case by suggesting the appellate court misapprehended the matter altogether, because <u>Lundeen</u>'s reliance on

13

Scottsbluff was misplaced in the first place.  They ask this Court to find that the Court of Appeals was confused, because Scottsbluff was a bolted rail case, as opposed to a CWR case.  They argue that if the Lundeen court would have had the benefit of the FRA's recent amendment to § 213.119, the appellate judges would have realized that inspections of CWR joints were not covered by the regulations when the accident occurred.  This Court declines the invitation to sit in review of the Court of Appeals.

It is true that, effective October 31, 2006, the FRA amended § 213.119 to improve inspection of CRW joints.  The amended regulation aims to improve identification of cracks in rail joint bars.  71 Fed. Reg. at 59677.  The new rule specifies numerous new requirements for CWR joint inspection.  Plaintiffs claim the amended regulations prove that the subject matter of CWR joint inspection was not covered in the 1998 regulations.  The argument fails because, if it were accepted, it would eviscerate any regulatory scheme which allows its standards to be updated, and hopefully improved.  Under plaintiffs' view of the federal regulations, any amendments would essentially declare the prior standards invalid, and show they failed to deal with the later clarified regulatory goal.

The Court finds the FRA's decision to bolster its CWR joint inspection regulations is in no way equivalent to a determination that the regulations had not previously covered such inspections.

Plaintiffs overlook the Eighth Circuit's recognition that train inspections fall squarely in the midst of multiple FRA regulations:

> federal regulations establish a specific inspection protocol including how, 49 C.F.R. § 213.233(b), when, §§ 213.233(c) & .237(a)-(c), and by whom, §§ 212.203, 213.7 & .233(a), track inspections must be conducted; the regulations establish a national railroad safety program intended to promote safety in all areas of railroad operations, § 212.101(a); federal and state inspectors determine the extent to which the railroads, shippers, and manufacturers have fulfilled their obligations with respect to, among other things, inspection, § 212.101(b)(1); and railroads face civil penalties for violations, § 213 App. B.

Lundeen, 447 F.3d at 614.

The inspection regime in effect when the Minot derailment occurred regulated all railroads.  As the FRA confirmed, prior to promulgating the amended § 213.119, "[t]rack owners were required to simply address joints in CWR in the same manner as they addressed joints in conventional jointed rail.  See 49 C.F.R. § 213.121."  71 Fed. Reg. at 59579.  Thus, Lundeen and Scottsbluff's analysis controls:  plaintiffs' negligent inspection claims are preempted by the FRSA.

### 3.  Negligent Construction and Maintenance

Plaintiffs recognize the numerous FRA regulations governing track construction and maintenance.  (Pl.'s br. at 28.)  General track maintenance requirements are set forth at 49 C.F.R. 213.103-213.143.  "The issues of bolt tightness, cracked joint bars, restressing, adjusting or destressing as to CWR rail, rail

15

anchoring, and defective track conditions are all covered by federal regulations." <u>Mehl</u>, 417 F. Supp. 2d at 1116-17 (citing 49 C.F.R. §§ 213.113, 213.115, 213.119, 213.119(b), 213.121(a), 213.121(b), 213.121(c), and 213.121(f)). Finally, as discussed above, § 213.119 directs CWR owners to include procedures for the maintenance of tracks in their internal plans.

Faced with these regulations, plaintiffs would still deny preemption by suggesting these are merely general regulations which fail to address their claims that CP Rail was negligent in maintaining its CWR track. For example, plaintiffs point to the lack of requirements for bolts or adequate lubrication of joints. Such cavils are unavailing when the Court considers that § 213.121 addresses how joint bars should be secured to rail, including the issue of bolt tightness. Claims that replacement of CWR and temporary joints are similarly unaddressed are unfounded; §§ 213.113 and 213.115 address defective track, and § 213.121 covers joint replacement. Plaintiffs' assertion that the regulations do not address anchor maintenance is incorrect in light of § 213.119(b)'s requirement of written procedures addressing this precise question.

This argument ultimately fails, however, because the Eighth Circuit has rejected such nit-picking. The Court has recognized that FRA regulations need not impose bureaucratic micromanagement over a subject area in order to preempt state claims. <u>Scottsbluff</u>,

16

416 F.3d at 794.  Plaintiffs' construction and maintenance issues are covered by multiple regulations; thus, the Court finds these claims are federally preempted.

### 4.  Negligent Hiring and Supervision

The issues of supervising and hiring railroad employees are also covered.  Section 213.119(h) requires CWR rail owners to develop internal plans for training employees who inspect and maintain CWR.  In addition, rail owners are required to "instruct each . . . employee on the meaning and application of the railroad's operating rules" under § 217.11(a).

Federal regulations cover minimum experience and education requirements for supervisory track maintenance workers and for employees who conduct inspections.  49 C.F.R. § 213.7(a) & (b). Plaintiffs, however, deny that rail employee hiring is substantially subsumed by this regulation for an alleged failure to prescribe qualifications for employees who actually maintain or install tracks.  Here again, the Eighth Circuit has found that the FRA's regulations need not delineate in minute detail each action a railroad must take, so long as the regulations cover the subject matter.  See Scottsbluff, 416 F.3d at 794.  The FRA regulations cover the subjects of employee supervision and hiring;  plaintiffs' claims are therefore preempted.

### 5.  Negligent Operation

Plaintiffs assert CP Rail's negligence in operating its train

at an unsafe speed.  This claim is clearly preempted.  In
<u>Easterwood</u>, the Supreme Court found excessive speed claims
preempted by 49 C.F.R. § 213.9, which "establishes maximum train
speeds."  507 U.S. at 675.  Also, under § 213.119(e), owners of CWR
must develop internal "procedures which control train speed on CWR
track" in various situations.

Similarly, plaintiffs' claim that CP Rail negligently
transported hazardous materials falls in the face of an extensive
federal regulatory scheme.  <u>See</u> <u>Mehl</u>, 417 F. Supp. 2d at 1117-18
(citing 49 C.F.R. §§ 172.101, 173.314, 173.315, and 174.200); <u>see
also</u> 49 C.F.R. §§ 174.61, 174.67, & 174.204.  These claims cannot
survive preemption.

### 6.  Additional or More Stringent Requirements

Plaintiffs' blunderbuss attacks continue.  They argue that,
even where federal regulations do cover a particular subject, they
may assert claims in accord with those regulations.  Thus, they
deny their tort claims premised on CP Rail's alleged failure to
comply with federal regulations are preempted, and instead argue
their claims merely parallel duties imposed by federal regulation.
According to plaintiffs, only additional or more stringent state
requirements are preempted.  These claims fail in light of the
applicable standard for FRSA preemption.

The words of the FRSA's preemption clause are clear:  a state
may regulate only "until the Secretary of Transportation . . .

prescribes a regulation or issues an order covering the subject matter of the State requirement." 49 U.S.C. § 20106. Once a federal regulation covers the subject matter of a state claim, that claim is preempted.

Plaintiffs offer Supreme Court decisions where additional or more stringent state law duties have been preempted. See Easterwood, 507 U.S. at 674-75; Shanklin, 529 U.S. at 354-55. But neither case considers whether a claim premised on the same standard as the federal regulation survives preemption. Plaintiffs have failed to provide any binding case law which supports their proposition that parallel claims may go forward. And they cannot do so because coverage remains preemption's touchstone.

The Supreme Court in Shanklin held that, when federal coverage is present, it is the displacement of state law, rather than compliance with federal regulatory standards, which determines whether state laws are preempted. Id. at 357-58. The Circuits are in accord. See, e.g., Doyle, 186 F.3d at 796 ("[§ 20106] does not distinguish between contradictory state requirements and merely duplicative state requirements."); Fifth Third Bank ex rel. Trust Officer v. CSX Corp., 415 F.3d 741, 747 (7th Cir. 2005) (state claims premised upon failure to comply with federal regulations do not survive preemption); Hesling v. CSX Transp., Inc., 396 F.3d 632, 645 (5th Cir. 2005) (same).

Preemption bars private claims for FRA violations. Congress

19

has given the Secretary of Transportation "exclusive authority" to impose civil penalties and request injunctions for violations of the railroad safety regulations.[4]  49 U.S.C. § 20111(a); <u>Abate v. S. Pac. Transp. Co.</u>, 928 F.2d 167, 170 (5th Cir. 1991) ("The structure of the FRSA indicates that Congress intended to give federal agencies, not private persons, the sole power of enforcement.").

Indeed, the FRSA has "absolved railroads from any common law liability for failure to comply with the safety regulations." <u>Mehl</u>, 417 F. Supp. at 1120.  This is the regulatory scheme which Congress has imposed.  And when Congress has clearly spoken, any relief from its regime must come from Congress rather than the Courts.  Private actions against railroads based on federal regulations are preempted.

       7.  <u>Local Safety Hazard Exception</u>

Plaintiffs' last effort to deny preemption is an appeal to the FRSA's Safe Harbor Provision.  Congress placed a savings clause into the FSRA regulatory scheme.  This provision permits a state to enact a more stringent law when "necessary to eliminate or reduce an essentially local safety or security hazard," so long as the law is "not incompatible with a law, regulation, or order of the United

---

[4]The single exception to the Secretary's exclusive authority exists when the federal government fails to act promptly.  In such cases, state government agencies can file suit, impose penalties, or seek injunctions.  49 U.S.C. § 20113.

States Government," and does "not unreasonably burden interstate commerce." 49 U.S.C. § 20106. Here the last gasp dies: Courts have consistently found this section applies only "when local situations are 'not capable of being adequately encompassed within uniform national standards.'" Williams, 406 F.3d at 672 (quoting Norfolk & Western Ry. Co. v. Pub. Utils. Comm'n of Ohio, 926 F.2d 567, 571 (6th Cir. 1991)); Nat'l Ass'n of Regulatory Util. Comm'rs v. Coleman, 542 F.2d 11, 14-15 (3d Cir. 1976). No such situation exists here.

Plaintiffs claim the stretch of track where the train derailed presents a particularly local safety hazard because the rail was worn, second-hand, 100-pound mainline track. For purposes of this Opinion, the Court accepts plaintiffs' assertion that this substandard light-weight track becomes especially brittle in North Dakota's extreme winter cold. Plaintiffs then add the fact of heavy rail traffic near Minot. Putting them all together, plaintiffs claim these factors spell a safety concern unique to the local area. The Court is not persuaded.

These factors do not present a safety hazard impossible to regulate on a national level. Plaintiffs' version of a "local safety hazard" devolves into a claim that 65 miles of inadequate rail satisfies the test. But substandard rail is not unique to North Dakota, and the fact that too-light rail becomes brittle when cold is not to be equated with an essentially local concern.

21

Inadequate rail, wherever it is found, is a national safety concern amenable to national regulation.  Thousands of miles of such track must exist in cold weather areas.

Plaintiffs do not claim the national regulations are incapable of addressing the safety issues concerning the stretch of track near Minot.  They actually assert the polar opposite: "Plaintiffs' negligence claims are predominantly based on [CP Rail's] failure to obey federal regulations."  (Pl.'s Br. 39.)  Plaintiffs seek to "merely enforce standards with which [CP Rail] already must comply."  Id.  The fact that plaintiffs' claims are almost entirely premised on CP Rail's violation of federal regulations undermines their assertion that these issues cannot be adequately addressed within the national standards.  Thus, there is no "essentially local safety hazard" in need of additional state regulation.  See 49 U.S.C. § 20106.  Plaintiffs' negligence claims simply cannot stand.

III.  <u>Conclusion</u>

The Court finds plaintiffs' complaint is preempted by the FRSA.  For this reason, defendants' motion is granted.  Accordingly, this matter is dismissed with prejudice.

IT IS SO ORDERED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  February <u>2</u>, 2007

                                 s/ James M. Rosenbaum
                                 JAMES M. ROSENBAUM
                                 United States Chief District Judge

22

**ADDENDUM**

**Related Cases**

04-3221   John Salling v. Canadian Pacific Railway Company

04-3222   Dion Darveaux v. Canadian Pacific Railway Company

04-3223   Larry Schafer v. Canadian Pacific Railway Company

04-3224   Gerald Wickman v. Canadian Pacific Railway Company

04-3225   Charles Swenson v. Canadian Pacific Railway Company

04-3282   Rebecca Behnkie v. Canadian Pacific Railway Company

04-3283   Marilyn Carlson v. Canadian Pacific Railway Company

04-3284   Larry Crabbe v. Canadian Pacific Railway Company

04-3286   Wilfred Dahly v. Canadian Pacific Railway Company

04-3287   Denise Duchsherer v. Canadian Pacific Railway Company

04-3288   Judy Deutsch v. Canadian Pacific Railway Company

04-3290   Jo Ann Flick v. Canadian Pacific Railway Company

04-3291   Leo Gleason v. Canadian Pacific Railway Company

04-3292   Charlotte Goerndt v. Canadian Pacific Railway Company

04-3293   May Beth Gross v. Canadian Pacific Railway Company

04-3294   Darla M. Just v. Canadian Pacific Railway Company

04-3295   Irene Clore Korgel v. Canadian Pacific Railway Company

04-3296   Richard McBride v. Canadian Pacific Railway Company

04-3297   Richard Muhlbradt v. Canadian Pacific Railway Company

04-3298   Lonnie Shigley v. Canadian Pacific Railway Company

04-3299   Bobby Smith v. Canadian Pacific Railway Company

04-3300     Rachelle Todosichuk v. Canadian Pacific Railway Company

04-3301     Shelly Hingst v. Canadian Pacific Railway Company

04-3303     Nathan Freeman v. Canadian Pacific Railway Company

04-3304     Doug Weltzin v. Canadian Pacific Railway Company

04-3305     Melissa Todd v. Canadian Pacific Railway Company

04-3306     Ray Lakoduk v. Canadian Pacific Railway Company

04-3307     Trent Westmeyer v. Canadian Pacific Railway Company

04-3309     LeRoy Slorby v. Canadian Pacific Railway Company

04-3311     Mark Nisbet v. Canadian Pacific Railway Company